# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SARA SLABISAK, M.D. | § § | |
| v. | § § | Civil Action No. 4:17-CV-597 |
| THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT TYLER and CHRISTUS GOOD SHEPHERD MEDICAL CENTER. | § § § § § § | Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Sara Slabisak, M.D.'s Motion for Sanctions Against Defendant the University of Texas Health Science Center at Tyler ("UTHSCT") (Dkt. #104). After considering the motions and relevant pleadings, the Court finds Plaintiff's motion should be denied (Dkt. #104).

### BACKGROUND

Plaintiff moves for sanctions against Defendant alleging three violations: (1) spoliation of interview notes; (2) the failure to produce interview notes; and (3) improper deposition conduct (Dkt. #104).

Concerning Plaintiff's first claim, Donny Henry—UTHSCT's deputy Title IX coordinator—and David Conley—UTHSCT's Title IX coordinator—interviewed Plaintiff on January 8 and 11, 2016, regarding Plaintiff's sexual harassment claim against Dr. Mohammad Makkouk (Dkt. #104 at p. 2). Henry and Conley then interviewed Dr. Makkouk on or about January 20, 2016 (Dkt. #104 at p. 2). During these interviews, Henry and Conley made handwritten notes (Dkt. #104 at p. 2). In his deposition, Henry testified that both his and Conley's notes from the interviews with Plaintiff and Dr. Makkouk were shredded after he and

Conley created summaries of the notes (Dkt. #105 at pp. 5–6). Henry explained that he learned in a previous position at the Office of the Attorney General to shred handwritten notes after summarizing them (Dkt. #105 at pp. 5–6).

Second, Henry also interviewed Dr. Ifeanyi E. Elueze, Tammy Mitchell, Neil Patel, Zehra Hussein, and Austin Ogwu in September 2016 (Dkt. #104 at p. 3). Henry testified that he did not destroy his handwritten notes from these interviews because UTHSCT's Chief of Police suggested that Henry should stop shredding his handwritten notes sometime between January and September 2016 (Dkt. #105 at pp. 10–11). Plaintiff claims UTHSCT did not produce Henry's retained handwritten notes until after Henry's deposition (Dkt. #104 at p. 3).

Third, during Henry's deposition, Plaintiff claims that Terry Witter—Vice Preisent for Legal Affairs and Chief Legal Officer of UTHSCT—"arose from her seat, walked over to Henry, and pointed out to Henry sections of the document he was being questioned upon." (Dkt. #104 at p. 3). Plaintiff contends Witter unethically assisted Henry's testimony (Dkt. #104 at p. 9).

Plaintiff filed the motion at issue on August 13, 2018 (Dkt. #104). UTHSCT filed its response to the motion on August 17, 2018 (Dkt. #106). Plaintiff did not file a reply to the motion.

**LEGAL STANDARD**

"'[T]he judge [imposing sanctions] should take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime.'" *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 618 (S.D. Tex. 2010) (quoting *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990)).

## I. Spoliation Sanctions

"Spoliation of evidence 'is the destruction or the significant and meaningful alteration of evidence.'" *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus*, 688 F. Supp. 2d at 612). "Mere destroying or altering of evidence, however, does not necessarily mean that a party has engaged in sanction-worthy spoliation." *Smith v. Chrysler Grp., LLC*, 1:15-CV-218, 2016 WL 7741735, at *3 (E.D. Tex. Aug. 31, 2016) (citing *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 789 (N.D. Tex. 2011); *Rimkus*, 688 F. Supp. 2d at 642). "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713 (quoting *Rimkus*, 688 F. Supp. 2d at 612). "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *see also King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)). "The term 'bad faith' has been described as conduct involving 'fraudulent intent and a desire to suppress the truth.'" *Ashton*, 772 F. Supp. 2d at 800 (quoting *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006)). "A trial court's decision on a motion for sanctions for spoliation of evidence during discovery is reviewed for abuse of discretion." *Guzman*, 804 F.3d at 713 (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996)).

## II. Rule 37 Sanctions—Untimely Production

Federal Rule of Civil Procedure 37 enables the Court to sanction a party for its failure to comply with a court order or disclose evidence. FED. R. CIV. P. 37(b)–(c); *Chilcutt v. United*

*States*, 4 F.3d 1313, 1319–20 (5th Cir. 1993); *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL 2683184, at *3 (E.D. Tex. July 11, 2011). "The following factors should guide a districts court's exercise of its discretion to impose sanctions for a discovery violation: '(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.'" *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) (quoting *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)); *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). "Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders." *Dvorin*, 817 F.3d at 453. The district court is given broad discretion in conducting this "fact-intensive inquiry." *Id.* (citing *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001)). However, the court's discretion is not "unlimited." *Chilcutt*, 4 F.3d at 1320 (citing *Marshall v. Segona*, 621 F.2d 763, 767 (5th Cir. 1980); *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976)).[1]

### III. Deposition Interference

"'The underlying purpose of a deposition is to find out what a witness saw, heard, or did . . . . [T]here is no proper need for the witness's own lawyer to act as intermediary, interpreting questions, deciding which questions the witness should answer, and helping the

---

1. The Supreme Court has stated that the district court must be guided by the following considerations when determining whether to impose sanctions under Rule 37: (1) the sanction must be just; and (2) it must "specifically relate[] to the particular 'claim' which was at issue in the order to provide discovery." *Chilcutt*, 4 F.3d at 1320–21 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 697 (1982); *Compaq Comput. Co. v. Ergonome, Inc.*, 387 F.3d 403, 413–14 (5th Cir. 2004)). Extreme sanctions are "'remed[ies] of last resort' which should be applied only in extreme circumstances." *Butler v. Cloud*, 104 F. App'x 373, 374 (5th Cir. 2004) (per curiam) (quoting *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985)). The Fifth Circuit has stated that extreme sanctions, such as dismissing a claim or default judgment, are proper when the discovery misconduct resulted from willfulness or bad faith, when the deterrent value of Rule 37 could not be substantially achieved by the use of less drastic sanctions, or when the discovery misconduct was plainly attributable to an attorney rather than a "blameless client," or because of "confusion or a sincere misunderstanding of the court's order." *Batson*, 765 F.2d at 514.

witness to formulate answers.'" *VirnetX Inc. v. Cisco Sys., Inc.*, 6:10-CV-417, 2012 WL 7997962, at *3 (E.D. Tex. Aug. 8, 2012) (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993)). "[Federal Rule of Civil Procedure 30] was amended in 1993 and places strict limits on when an attorney may instruct a deponent not to answer a question." *Id.* (citation omitted). "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." FED. R. CIV. P. 30(d)(2). "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." FED. R. CIV. P. 30 advisory committee's note to 1993 amendment. "'The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule.'" *Nieman v. Hale*, 3:12-CV-2433-L-BN, 2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014) (quoting *Howell v. Avante Servs., LLC*, CIV.A. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013)). "Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." *S. La. Ethanol, L.L.C. v. Fireman's Fund Ins. Co.*, CIV.A. 11-2715, 2013 WL 1196604, at *8 (E.D. La. Mar. 22, 2013) (citations omitted).

## ANALYSIS

As an initial matter, the Court notes that Plaintiff's motion is untimely. Plaintiff learned of the issues presented at Henry's deposition on May 29, 2018 (Dkt. #105). The Court set the discovery deadline in this case for June 1, 2018, and the dispositive motions deadline for June 14, 2018 (Dkt. #34; Dkt. #69). Despite the passage of time and deadlines, Plaintiff did not raise the present issues until she filed her response to UTHSCT's motion for summary judgment on July 23, 2018, and did not file her motion for sanctions until August 13, 2018 (Dkt. #93; Dkt.

5

#104). This Court has previously refused to consider a plaintiff's spoliation argument when the plaintiff first raised the argument in response to a defendant's motion for summary judgment. *Sizemore v. Dolgencorp of Tex., Inc.*, 4:10-CV-650, 2012 WL 1969951, at *1 (E.D. Tex. June 1, 2012) ("The Plaintiff should have filed a discovery motion with the court prior to the conclusion of the fact discovery deadline in order to preserve this issue."). Further, if the parties would have notified the Court of the issues presented earlier, the Court likely could have resolved the issues through the discovery dispute process detailed in the Scheduling Order—without the need to consider sanctions (Dkt. #34 at p. 4). Regardless, the Court finds that Plaintiff's motion should be denied on its merits.

## I. Spoliation Sanctions

Plaintiff does not demonstrate that Henry acted in bad faith when he shredded his handwritten notes from his interviews with Plaintiff and Dr. Makkouk. "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (citing *Mathis*, 136 F.3d at 1155). "The term 'bad faith' has been described as conduct involving 'fraudulent intent and a desire to suppress the truth.'" *Ashton*, 772 F. Supp. 2d at 800 (quoting *Consol. Aluminum Corp., Inc.*, 244 F.R.D. at 344).

Henry testified that it was his procedure to destroy his handwritten notes after summarizing them (Dkt. #105 at p. 6). Henry claims he learned this procedure from his previous employment with the Office of the Attorney General (Dkt. #105 at p. 6). Henry also testified that once UTHSCT's Chief of Police recommend that he should not shred his handwritten notes, Henry ceased to do so (Dkt. #105 at p. 11). Plaintiff contends: "Henry's claim that he was taught by the Texas Attorney General's Office to destroy interview notes is incredulous. This

incredible rationale is sufficient to impute a willful or intentional destruction to prevent use of the notes in litigation. This is bad faith." (Dkt. #104 at p. 6).

The Court finds that the evidence presented does not show that Henry held a fraudulent intent and desire to suppress the truth for the purpose of hiding adverse evidence. Henry provided the summaries of his shredded notes to counsel, who produced the summaries to Plaintiff prior to Henry's deposition (Dkt. #105 at p. 6; Dkt. #106 at p. 2). Certainly, if Henry desired to suppress the truth or hide adverse evidence, he would have shredded the summaries of his notes as well. *See Smith*, 2016 WL 7741735, at *3 (citations omitted) ("Mere destroying or altering of evidence, however, does not necessarily mean that a party has engaged in sanction-worthy spoliation."); *Tex. Instruments, Inc. v. Hyundai Elecs. Indus. Co., Ltd.*, 190 F.R.D. 413, 419 (E.D. Tex. 1999) (an expert's disposal of his handwritten notes is not spoliation when other notes exist). Reviewing all the evidence presented, Plaintiff does not present sufficient evidence that Henry acted in bad faith when he destroyed his handwritten notes to warrant spoliation sanctions. Accordingly, the Court **DENIES** Plaintiff's motion for sanctions with respect to Plaintiff's spoliation argument (Dkt. #104).

II.     **Rule 37 Sanctions—Untimely Production**

Plaintiff next moves for sanctions against UTHSCT pursuant to Federal Rule of Civil Procedure 37 because UTHSCT did not produce Henry's retained handwritten notes concerning his interviews with Dr. Elueze, Tammy Mitchell, Neil Patel, Zehra Hussein, and Austin Ogwu (Dkt. #104 at pp. 7–9). The Court's Order Governing Proceedings required the parties' initial mandatory disclosure to include "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party." (Dkt. #19 at p. 4). The Court's

Scheduling Order reminded the parties "to have already disclosed, without awaiting a discovery request, information in addition to that required by FED. R. CIV. P. 26, including names of persons likely to have, and documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #34 at p. 3). Additionally, on March 8, 2018, Plaintiff served her first requests for production on UTHSCT specifically requesting notes taken by employees of UTHSCT concerning Plaintiff (Dkt. #104-2 at p. 4).

Despite the Court's orders and Plaintiff's requests, Plaintiff claims UTHSCT did not produce Henry's notes concerning the individuals listed above until after Henry's deposition (Dkt. #104 at p. 8; Dkt. #104-5). Plaintiff argues, "It is unconscionable that . . . [UTHSCT] would not be aware of the relevance of handwritten notes of interviews taken during the course of a sexual harassment investigation." (Dkt. #104 at p. 8). As a result, Plaintiff requests a "substantial sanction including striking UTHSCT's pleading and precluding UTHSCT from opposing Plaintiff's claims." (Dkt. #104 at p. 8). UTHSCT's response does not provide an explanation for its untimely production of Henry's notes (Dkt. #106).

"The following factors should guide a districts court's exercise of its discretion to impose sanctions for a discovery violation: '(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.'" *Dvorin*, 817 F.3d at 453 (quoting *Garrett*, 238 F.3d at 298); *CQ, Inc.*, 565 F.3d at 280. The Court addresses each factor in turn.

First, UTHSCT does not provide a reason why Henry's notes were not produced before Henry's deposition (Dkt. #106). Accordingly, this factor weighs in favor of sanctions.

Second, Plaintiff does not explain how the late production of Henry's notes prejudices Plaintiff (Dkt. #104 at pp. 7–9). The Court will not impose the "substantial sanction[s]"

8

requested by Plaintiff without a demonstration that Plaintiff was substantially prejudiced (Dkt. #104 at p. 8). Without a showing of prejudice, this factor weighs against sanctions.

Third, the Court cannot determine whether a continuance could cure any prejudice because Plaintiff does not identify any prejudice (Dkt. #104 at pp. 7–9). Assuming prejudice to Plaintiff exists, the Court again notes that such prejudice could likely have been cured had Plaintiff notified the Court of this issue earlier.

Fourth, the Court considers its discovery policy as a relevant circumstance. The Court allows parties to conduct discovery—including the taking of depositions—past the discovery deadline. If Plaintiff believes she was prejudiced by UTHSCT's failure to produce Henry's notes before Henry's deposition, the Court suggests the parties conduct a brief, second deposition of Henry with UTHSCT shouldering the costs. In other words, the Court's discovery policy should enable the parties to cure any prejudice caused by UTHSCT's late production of Henry's notes.

Considering the factors examined above, the Court finds sanctions inappropriate for UTHSCT's failure to produce Henry's notes. Therefore, the Court **DENIES** Plaintiff's motion for sanctions with respect to Plaintiff's Rule 37 argument (Dkt. #104).

## III. Deposition Interference

Plaintiff next moves for sanctions due to Terry Witter's deposition interference (Dkt. #104 at p. 8). Plaintiff claims that during Henry's deposition Witter, "arose from her seat, walked over to Henry, and pointed out to Henry sections of the document he was being questioned upon." (Dkt. #104 at p. 3). Plaintiff argues the appropriate sanctions for Witter's conduct would include: "(1) [s]triking UTHSCT's pleadings; (2) [p]recluding UTHSCT from offering evidnece; (3) [a] spoliation instruction; and (4) Plaintiff's reasonable and necessary

9

costs and attorney's fees for filing this motion and deposing Donny Henry." (Dkt. #104 at p. 11). UTHSCT's response does not address Witter's conduct (Dkt. #106).

The conduct at issue occurred during the following exchange in Henry's deposition:

> A. What is it exactly you're looking for?
>
> Q. What I was wanting you to look for in your report is any reference to the fact Dr. Slabisak was using her sexual harassment complaint to delay any other investigation she might have been involved in.
>
> A. That was the perception.
>
>> MR. HUFF: Objection; nonresponsive.
>
> Q. My question was if you would look and see if you see anything in the report.
>
> A. I will look.
>
>> MR. HUFF: Okay. Ms. Witter, you need to go sit down and not be giving your –
>>
>> MS. WITTER: Excuse me, sir.
>>
>> MR. HUFF: -- giving your witness a document. You know that's improper to walk up and give your witness a document when he's testifying. You're not even counsel of record in this case.
>>
>> MS. WITTER: I am counsel of record.
>>
>> MR. HUFF: No, you're not.
>>
>> MS. WITTER: Yes, sir, I am. I have been since the beginning.
>>
>> MR. HUFF: If you do that again you'll have a chance to explain that to the Court, because you know that's improper and unethical. We'll take your deposition, but not today.
>
> A. On page 4 under B, it's the third paragraph.
>
> Q. Okay. What does it say there?

> A. "She was interested in what this investigation might entail, how this might affect her staying in the program and proceeded to address the other allegations that were presented to the program chair."
>
> Q. Okay. And that's what Ms. Witter pointed out to you when she walked over and gave you that, right?
>
> > MR. HUDSON: Objection. Just so the record's clear, the document went on the table, I grabbed it as soon as it hit the table, Mr. Henry did not look at the document and then you went on a tirade against Ms. Witter. So, no, he did not review a document and, no, he didn't get anything pointed out to him, just to make sure that that's clear for the record since you don't like to videotape.
> >
> > MR. HUFF: You know, you're free to videotape anytime you want to.
> >
> > . . . .
> >
> > MR. HUDSON: Agreed, and you've opted not to [videotape the deposition], but you keep making comments on the record apparently in an attempt to, I suppose, build something that you can throw at the wall. Nothing here indicates Mr. Henry has looked at anything improper other than your exhibit.

(Dkt. #105 at p. 12).

A review of the Docket indicates that Witter is not counsel of record for UTHSCT. Regardless of Witter's alleged conduct, an attorney who is not counsel of record should not actively participate in a deposition. If Witter wishes to represent UTHSCT in this case, she should make a formal appearance. Otherwise, Witter must not actively participate in future depositions or claim to be counsel of record in this case.

Concerning Plaintiff's sanction request, the Court notes that the deposition testimony supports two versions of events: (1) Plaintiff's claim that Witter approached Henry, handed him a document, and pointed to a portion of the document and (2) UTHSCT's objection that Henry

11

did not review a document or have any information directed to his attention. If the Court accepted only Plaintiff's claim, the Court would find Witter's conduct inappropriate, but not sanctionable. Rule 30(d)(2) sanctions are reserved for conduct that impedes, delays, or frustrates the fair examination of the deponent, not necessarily for single inappropriate acts. *Compare Carter v. Burlington N. Santa, LLC*, 4:15-CV-366-O, 2016 WL 3388707, at *3 (N.D. Tex. Feb. 8, 2016) (sanctions appropriate when plaintiff made untruthful statements regarding the contents of a folder, and counsel instructed plaintiff not to answer questions relating to the contents of the folder); *Howell*, 2013 WL 824715, at *6 (sanctions appropriate when counsel informed deponent, one day before deponent's deposition, that counsel would no longer represent deponent, causing deponent to incur the costs of representing himself at his deposition); *and VirnetX Inc.*, 2012 WL 7997962, at *3 (sanctions appropriate when counsel terminated a deposition because counsel merely disagreed with a line of questioning); *with Kasparov v. Ambit Tex., LLC*, 3:16-CV-3206-G-BN, 2017 WL 4842350, at *6–9 (N.D. Tex. Oct. 26, 2017) (sanctions inappropriate when defense counsel asked the same questions multiple times believing the witness did not give a responsive answer and plaintiff's counsel repeatedly objected to the form of the questions). Therefore, even if Witter engaged in inappropriate deposition conduct, the Court finds such conduct would not rise to a sanctionable level.

The Court reminds the parties of their duties and ethical obligations under the Federal and Local Rules as well as the Texas Lawyer's Creed. However, the Court **DENIES** Plaintiff's motion for sanctions with respect to Plaintiff's Rule 30(d)(2) argument (Dkt. #104).

## CONCLUSION

Due to the preceding discussion, the Court **DENIES** Plaintiff's Motion for Sanctions Against Defendant UTHSCT (Dkt. #104).

**SIGNED this 4th day of October, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE